Good morning, Your Honor. This is Long Do from Athene Law on behalf of the appellants. Eleven hospitals, I just call them hospitals for brief. The hospitals initiated our two lawsuits in San Francisco Superior Court in April of 2019, and the purpose of these lawsuits was to prevent the state, DHCS, from recouping incentive payments, federal dollars in the tune of about $11 million across all 22 hospitals that had been determined by DHCS to be appropriately awarded to the hospitals and that had actually been remitted to the hospitals, so they were in the custody of the hospitals, these monies, and it was six years after the payments had been made that DHCS conducted audits to seek to recoup them, and so the time that we filed the lawsuits, the monies were still in our possession and there were demands made by DHCS for recoupment of the monies and also threats that future payments would be offset by the amount of overpayments that were identified. So we initiated the lawsuits in April 2019, and in the two years since commencement of those lawsuits, litigation does move slow, but I think in this case, it was especially slow. The cases took what I characterize as one step forward, but then by the action of the District Court, two steps backwards where we find ourselves today. So is your primary complaint that the Department misunderstood and misconstrued the federal regulations? That is one of the primary complaints that was addressed by the District Court. It's not the only complaint. I know it's not your only complaint, but it struck me in reading your briefs that that really is the guts of the case. And so my question is, why shouldn't we ask the federal government what their view is of this regulation, because that would seem to be rather pivotal. The reason is, Your Honor, the audit or the incentive payment program is administered solely by the state, by DHCS. DHCS, in consultation with CMS, came up with a state plan for the state plan, and then under California law, if the requirements for incentive payments are met, it would be DHCS that calculates the amount, accepts the attestations from the hospital, determines eligibility, and these are all actions that are conducted by DHCS. Correct, but they're basically enforcing federal regulations. Hypothetically, if the state got it right in their interpretation of the federal regulations, are you saying that they had no power to audit, no power to recoup? If they got it right. Again, hypothetically, I know you don't agree with that, and it's a separate subject, but if the state is correct in its interpretation, are you contending they had no power to audit, no power to recoup? Well, we're contending that the state didn't follow or didn't invoke the correct audit procedures. What they invoked was a procedure under California law for recoupment of payment for services rendered, which is not the correct audit authority. So the audit procedures and the audit process through their Office of Administrative Hearing, the OAHA office, that was the inappropriate vehicle through which to conduct these audits. I want to follow up on Judge Thomas's question with a related question, and I'm going to ask your friend more details on this question, but why isn't CMS a necessary party in this case? Because, Your Honor, under federal law, CMS, under federal regulations, CMS has no discretion. Once the state determines that certain eligibility is met, CMS must provide the funds. There's  I'm sorry, must provide? Must provide the incentive payment. So CMS is basically the funder, and the state is the entity and the party that runs and operates the program and determines. Your view is that whether CMS agrees with you on the substance or not, that their presence here is not necessary because you think that even if CMS is correct, or even if the state is correct as to what the federal regs, what CMS says the federal regs say, you can be afforded complete relief in this case without CMS as a party? That's correct, Your Honor. And this issue was briefed in the district court. It's just not off the top of my head, but there's a federal regulation that we cited whereby CMS wants, you know, in this sort of sharing situation where the state implements, designs and implements a federal program, and CMS provides the federal funds in that sort of sharing program. Now, granted, CMS has reviewed the state plan, has approved this plan, so it's not that CMS has no say in the matter, but once the program is up and running and the state has made a determination that certain incentive payments should be awarded, as in our case, in that situation, CMS has no say because, again, CMS just provides the funding. And so our position is, yes, CMS is not a proper party. We couldn't get the full relief that we're entitled to if we were only to sue CMS. Unless you had other questions on this particular issue, I would like to move on to I think as Judge Thomas had mentioned earlier, the heart of the case, which is this question about unpaid days and whether the Medicaid numerator should include unpaid days. This is, I believe, a classic situation where fidelity to the statutory text, and in our case the regulatory text, too, is crucial because there's a lot of noise in what CMS had to say and the preambulatory text and some of these FAQs that have been mentioned and relied upon by the district court. But really, the district court didn't even look to the statutory text, and that's where we really have to begin. And I think in our case, because there is so much extraneous noise, it's especially important to start with the statutory text. And it's that... Counsel, before we start with the statutory text, if we were hypothetically to agree with you that your claimed injuries were fairly traceable to the actions of the current defendant, why should we reach this issue instead of sending it back to the district court? If we were going to hypothetically reverse on Article III standing, why should we take up this issue? Sure. Your Honor, the district court's judgment and its analysis of this particular issue, the unpaid days issue, was couched in alternative terms, I believe. One, because it said that it was a lack of subject matter jurisdiction, but it also said that it showed that there was no case for controversy. The issue was also raised by DHCS in a motion on the pleadings. And so, you know, it comes up in various ways. So if you were to send this back, and the court did reach the issue and the question, there would be some ambiguity about whether the claim, setting aside subject matter jurisdiction, but whether the claim can proceed as a matter of law. So I think those are issues that are presented by the court and require this court to reach and resolve. And as I said, I think in resolving that question, you start with the statutory text. And the text says, in plain terms, the text says that in part of calculating the incentive payment, you look to the Medicaid share. And that's a calculation. The statutory text says that you calculate the Medicaid share in the exact same way that you would calculate the Medicare share, except for one thing. And that's the one thing that's very crucial to us. And so the HITECH Act says the difference between the Medicaid share and the Medicare share is the same, except that for the numerator, for the Medicaid share, you count all bed days that are attributable to medical services received by the individual. That's what the statutory text says. And I think what it instructs us to do is to start, we compare that language to the statutory language that defines the Medicare share. Because again, the language says it's the same except for the numerator. So the Medicare share says that you count bed days that are attributable to payment that has been made for those days. That's the distinction. The only distinction is for the Medicare share, there's specific reference to the word payment. Whereas for the Medicaid share, it's much broader language. It instructs us to count all bed days that are attributable to medical services received. So the difference is payment versus medical services received. And I think we think that that difference means for the Medicaid share, you have to, or DHCS, must count both paid and unpaid days. And you're saying that there is somewhere in the district court's order where the district court definitively resolved that issue against you? Yes, Your Honor. The district court actually said that this question about whether to count paid or unpaid days is central to the case. Well, I understand that it's central to the case, but I'm having trouble, and maybe it's just me, locating where the district court definitively decided this issue, because what I take as the definitive ruling of the district court on this issue is because the Federal Act here at issue does not leave any interpretive role to the claim on what they argue is a faulty interpretation of the Act. And maybe I've missed it, but I haven't seen where the district court definitively said California's interpretation of the Act is correct, the plaintiff's interpretation of the Act is wrong. There's a portion in the district court order, Your Honor, I think it's maybe perhaps a little bit before, where you had just read where the district court cites comments that CMS made, where the district court concluded that CMS had determined that... Are you looking at the portion that says these CMS comments make clear that CMS interprets the HITECH Act to limit patients for inpatient bed days to those covered or paid by Medicare? Yes, Your Honor. That portion, and there's some language related to that discussion by which the district court said that. So would you address the comments because that seemed to be an important consideration for the district court? Sure. So there are, as I said, there's a lot of noise. And just to answer your question, give you a sense of what was going on, the HITECH Act was passed and this massive program, this incentive program, was rolled out very quickly. The interim rule, and we're talking about a 400-page rule, was promulgated by CMS within less than a year after the HITECH Act was passed in 2009. And then six months later, this final rule was passed. And you can imagine there were thousands of comments that CMS had to respond to. And so some of the comments, or the specific comment that the district court relied upon, is in the preambulatory part of the final rule in 2010. So the district court relied on one comment in this 400-page final rule. And the comments was that CMS said was that the Medicare share can only include paid days. And if you read further in the comment that the district court cited, CMS explains why for the Medicare share, CMS focused again on the word payment in the statutory text. But counsel, even if the district court was saying that CMS interpreted the statute in the same way that California does, is there any place in the district court's order where the district court said, and CMS's interpretation is correct? I believe that when the district court cited that CMS statement, it was citing that CMS comment as a correct reflection of the law. Well, I mean, maybe that's there. I'll look more. But I didn't see where they said, and CMS is correct, and California is correct. This is what the statute does. Sure. But I do want to make sure we emphasize one thing. I think this line of questioning is whether or not DHCS was consistent with CMS's interpretation of the HITECH Act on discretion of unpaid days. It still comes back down to these are audits that were being conducted and assessed. These were decisions and discretion that was being made by the state, by DHCS, in interpreting federal law. And the district court relied upon CMS sources to determine what that federal law is. But when we're taking action against the state for audits that seek to recoup monies that had been already paid to us, the question then really is, did the state, what we're alleging is that the state didn't apply the correct standards and didn't follow federal law. And whether the state did so or not, it's not a question of subject matter jurisdiction. It's a question of whether the state was correct in following the law. Well, and if they were correct, then the only question, it seems to me, is whether or not you have an independent audit and recoupment claim that has nothing to do with the interpretation of the statute and regulations, right? Well, that's... And that's a state law question. That part of it is a state law question. We've raised other issues surrounding the audits that we believe are state law questions as well as due process questions as well. We believe that there are other aspects of the audit, the fact that the state relied upon actual data versus estimated data that comes from cost reports. We believe that the HITECH Act requires incentive payments to only be awarded and calculated based on cost reporting. And cost reporting is another way of saying that it's estimated data that is presented at the year one, at the attestation year. And so we're saying that's what's required under the law, but the audits didn't look just to the information that's received from the cost reports during the year one attestation. But, you know, these are all issues that were raised in our allegations that are part of our second 1983 claim for due process violations that the district court didn't really even address or recognize to be our claims, but still terminated our entire lawsuit. Counsel, from my read of the district court order, the district court remanded the administrative mandamus claims, but I don't see anything in the district court's order about the traditional mandamus claims. Was that also remanded? No, Your Honor. The only thing that was remanded are the claim for writ of administrative mandate. Basically, the claims in which we challenged a few final decisions that came from the administrative process. If hypothetically we were to reverse the district court, would you want us to leave the remanded claims in state court? No, Your Honor. We're requesting that the entire judgments, including the remand order, be reversed and that everything be restored in the district court. What's been happening with the remanded administrative mandamus claim? Nothing has moved forward on that issue, Your Honor. Before you sit down, do you want to talk about sovereign immunity? Sure. You make an argument on appeal that the state waived sovereign immunity by removing, but you didn't present that to the district court, correct? No, Your Honor. We did not present that particular question. We focused on the fact that... Your argument before the district court, I think, and you'll have to refresh me, is simply that this has gone on too long and you can't assert this at the last minute. Unlike some of our cases, the state did raise the affirmative defense of sovereign immunity right away. Do you agree with that? The state raised it in its answer, but then for a year after that, the state submitted to the district court's jurisdiction and litigated the matter. I think that even to the extent that it did raise it in an answer, it waived it again. You've got two minutes left, Your Honor. Is there... I do, Your Honor. I did want to say one thing before in the last 10 seconds. One of the claims that we have that is important to remember is for Marion Medical Hospital. It's a dignity hospital. That's a $3 million claim that had nothing to do with the unpaid days issue. It had to do with whether DHCS properly even accepted the appeal. That's a very important claim for us that the district court didn't recognize, but yet swept into its very broad order, terminating our case. We have no relief and no recourse to the courts for that $3 million claim. Thank you so much. May it please the court, Deputy Attorney General Dane Barker for the Department of Health Care Services. Could you move the microphone just a little closer? Thank you. How's that? This is a simple statutory interpretation question, and this panel should look to the most plain reading of the statute and authorities at issue here. Here the most plain reading of the two statutes is the one that defines the inclusion of Medicare bed days, and the other says that this equation is the same for Medicaid bed days, except that the Medicaid bed days, not the Medicare bed days, should be counted in the latter equation, and that the secretary should define what is meant by an inpatient bed day. So why did the state then pay the money, if it's so clear? In the first instance, this... I mean, if we were debating this in the first instance, it's one thing, but if you're asking to recoup, and I gather between the lines, the state, in your view, made an error in paying it in the first place. Yeah, the state treated the payments the way that it would treat Medicaid payments generally, in which case the hospitals submit the estimated numbers, and then those numbers are then later reconciled through and then audited, and then the individual hospitals have the opportunity to present data to defend their estimates. So are you telling me the procedure basically is the state will pay the submitted amount and then check on it later in every instance? For typical Medicaid payments, yes, and the purpose of that is to maintain a flow of monies to these hospitals, that it's ongoing over time. It's reconciled constantly, but it is with the intent of keeping the money flowing. Okay, and I gather then you would say as part of this normal procedure, it happens in non-high-tech cases as well as this? That's correct. Okay. This is a procedure that the hospitals would have familiarity with. The main thrust of the hospital's briefing and their argument for this court is to muddy these waters and to create the impression of ambiguity or uncertainty when in fact five things are clear here, and first, the HITECH Act states that the federal secretary should define what bed days should be and should not be included, and she did so, and she did so prior to the hospitals submitting their attestations to the department, and two, the department applied the secretary's definition in its audits, three, the hospitals acknowledged in four consecutive years of attestations that they each uncontestedly made that the they submitted could and would be audited both pre- and post-payment. For the department lacked discretion to diverge from the federal authorization of the terms at issue here. Counsel, here's where I have a problem with the district court's jurisdiction ruling, that our test, as mandated by the Supreme Court for whether something is fairly traceable or not, does not require us to exclude all other actors, and here, there's no question the state conducted the audit, there's no question that the state is trying to get back the money, and there's no question that the plaintiffs have alleged that these are various violations of state law in the United States Constitution. Regardless of whether those are meritorious or not, why isn't their claim under our Article 3 standing and case or controversy jurisprudence, why isn't it fairly traceable to the actions of the state, even though, in the state's view, it was required by their federal partner? I think that the district court opted here for dismissal on subject matter jurisdiction grounds rather than, perhaps, on failure to state a claim grounds, although both apply here and the matter could have been dismissed on either ground, is because of the traceability and the redressability arguments. And for redressability, this is a spending clause legislation that is 100 percent federally funded, and because the federal government is not a party here, it cannot be ordered to authorize the payments, the increased payments sought here by the hospitals. But you didn't file a motion to dismiss for failure to name a necessary party, right? No, Your Honor, but the, to be perfectly frank, those motions aren't typically very successful for us, and this one, we thought that the law was fairly clearly in our favor on this and when they filed the consolidated complaint in federal court, we filed our motion to dismiss a week later. So it was something we moved very quickly on. Do you agree with your friend that the district court definitively decided that you're right on the meaning of the statute and regs? I'll be honest with you, Your Honor, I had that thought going, you know, into this argument, but when you raised that question a couple times to opposing counsel, I did reflect back on the decision, and I think that, I think that your depiction of it is accurate. I think that the court said that the federal government had made a definitive interpretation, but it did not, to my recollection at this point, say, you know, that definition or that interpretation was correct or accurate. I mean, that's the way I took it. I read the district court as saying, here's the comment, CMS has made its decision, and the state had no choice. It doesn't, it didn't decide, at least from my reading, that CMS was correct. I think that's what Judge Bennett's talking about. I think that, I think that completes. So, I mean, I guess that, and I'll ask the same question that I asked your friend, which is, if this case hinges on the interpretation of the statute, why shouldn't we ask the government if it wants to brief that or not, the federal government? If the court does determine that remand is appropriate and decides that the... This would be pre-remand. I mean, if the secretary, if CMS comes in and says the state is absolutely right, well, that kind of changes things a bit. If they say, no, no, CMS got it wrong, that also changes things a little bit. They may or may not be a necessary party, but we, and we haven't talked, so we haven't decided one way or the other, but that's why I'm soliciting your... No, that's fair, Your Honor, and my understanding is that the federal government would in fact say that, because that's how this has been applied elsewhere, but we wouldn't object to the court making that. I don't know if it's necessary or not, but it's just something that I was musing about and thought I would ask your views on. That's fair, but I don't think the court needs to get to it. I think that what we have here before us is a situation where the subject matter jurisdiction doesn't really apply to the department here. We could bring the federal government in to muse, but I don't think that makes... Well, I gather your position is that, look, it doesn't make any difference because the district court was correct in saying this is what CMS required, and I'm going to take that assumption going forward, and the state didn't have a choice. Their argument is, as I understand it, is yes, you did have a choice on the audits and recoupment. What's your response to that? The audits have been... The district court's order remanded the audits to state court. I mean, if they want to make arguments challenging the audits there, they have the ability to do so at this point. In your view, that's a state law issue? Yeah. Unless the panel has any further questions for us. I guess I'd like to ask you about the sovereign immunity portion of this, if you don't mind. I'm going to move it. So their argument before the district court, as I understand it, was that you waited too long. And what's your response to that? It's false. The department... There's three underlying matters. There's two now before this court, but there are three underlying matters here. And in all three of them, the very first paperwork filed by the department was stated definitively sovereign immunity is an affirmative defense. In the San Joaquin and in the St. Vincent matters, the sovereign immunity was asserted in the answer. In the dignity matter, sovereign immunity was asserted in the removal paperwork, which is the first paperwork we filed in that case. And in every substantive briefing since then, the department has asserted sovereign immunity affirmatively. The case that the Ninth Circuit has on this is Walden v. Nevada, which says that sovereign immunity requires notice. And notice was given here. I don't think that the plaintiffs can assert here that they were not aware that sovereign immunity would be an affirmative defense. They've also, though, urged on appeal that there was waiver by removal. Sovereign immunity isn't waived by removal in the way that 11th Amendment immunity is. But is that partly a state law issue? To the extent that there are questions of whether or not state law through administrative mandamus or a traditional mandamus under California law might apply sovereign immunity, those, one, those defenses were asserted in state court, and two, the way that the department reads the relevant California law on that is that 1085 is not something that the invocation of which defeats the sovereign immunity. Have you cited, did you cite to the district court or have you cited to us any California state court case that says what you just said? The case that's most directly on point for its analysis of a 1085 and how it applies, and it's a funny case, but it's the American Indian. And in that case, it describes 1085 as a vehicle, similarly to the Declaratory Judgment Act. It isn't itself a cause of action, but it is a vehicle whereby a substantive cause of action can be brought. So to the extent that there are federal claims brought under 1085, then those federal claims are, the state is afforded the same immunities and protections that it would be otherwise. To the extent that those are purely state law claims, the department's understanding is that those have been remanded. They've been remanded for now, but your friend is asking that if we reverse, that we reverse the remand order as well. Yes, in which case, for the federal causes of action, sovereign immunity would still apply. And for the state law matters, there simply isn't substance to the primary arguments that the plaintiffs or petitioners are making here. I mean, there really isn't a viable procedural due process claim. So your argument is not that you're immune. Your argument is their claims are essentially frivolous. Under the state law claims, yes. Under the federal law claims, I would say that the immunity would still apply, and Alden v. Maine would support that. And would you address the dignity health separate issue? Dignity health separate issue? Your friend argues that dignity health has a whole different theory that was not addressed by the district court. To the extent that the hospitals are challenging the audits and the validity of the audits, those claims can proceed and are proceeding, or will proceed, rather, in state court. And I'm not sure what specifically petitioners are referring to with that claim, but not all of the hospitals timely appealed their audit findings. So there are some hospitals that didn't do their diligence, and I don't think that this tribunal should provide them relief for that. Does anyone have further questions? Thank you, counsel. We'll hear rebuttal. Thank you. I'd like to address just a couple issues about CMS, since it seems like there may be a question about CMS's role in our case. I don't believe that's required, nor is it appropriate, one, because CMS has already spoken as to what, as to the unpaid bed days issue. It spoke by issuance of the 2010 final rule, and in that regulation, CMS said the Medicaid share must count bed days that are attributable to Medicaid individuals. That's the language that CMS used. It's consistent with the HITECH Act, and in fact, I believe it goes further. It's broader than the HITECH Act, which says that you count bed days that are attributable to Medicaid services. Here CMS did speak by issuance and going through the APA and issuance of the 2010 final rule. I don't think we need to hear from CMS as to interpretation of its own regulatory language. That's certainly something that this court is well-equipped to handle, especially here where I believe the language is quite clear. And then secondly, as I mentioned earlier, the statute that I had in mind is 42 CFR 431.250. That's the statute that says CMS must release federal funds participation dollars if it is ordered to do so by a court, and so what we're seeking is a court order that says that unpaid days must be included in our Medicaid share. And so for those two reasons, I don't believe we need to hear from CMS, and certainly CMS is not a required party in our case. And then finally, again on remand, I think the order should be that there is subject matter jurisdiction over both federal and 1983 claims, and sovereign immunity was waived either by removal and also additionally by their litigating the cases for a year in federal court. And again, we raised it in our brief. We didn't have time today to talk about it, but we believe also that it would benefit judicial economy if the court would also reach the legal questions, the pure legal questions that were raised in DHCS's motion for judgment on the pleadings because those were addressed to the court. I understand the district court did not reach the merits of those questions, but I believe because they are pure legal questions that it would aid in judicial economy if the court were to resolve those questions as well on remand. Thank you, counsel. The case history will be submitted for decision. That is the final case on the oral argument calendar this morning. I understand we will come back and meet with the students, but in the interim, and I hate to spring this on our law clerks, but perhaps my clerks and Judge Bennett's clerks in the interim could talk about the clerkship process and the federal courts. Obviously, and I assure counsel of this, we do not discuss the cases, even in response to a question from the students. We can't take questions about the arguments today, but we'll be in recess. We will conference on the cases, and then we will return to the courtroom. Thank you.
judges: THOMAS, BENNETT, Moskowitz